## UNITED STATES NAT. BANK v. AMALGAMATED SUGAR CO.

(Circuit Court, D. Oregon. May 16, 1910.)

### No. 3,472.

BILLS AND NOTES (§ 330*)—CHECKS—INDORSEMENT—RIGHTS OF INDORSEE.

Where defendant drew a check to its own order, and indorsed it without restriction for credit to an insolvent bank, in which defendant had an account, and the indorsee indorsed the check for collection and credit to plaintiff bank, its correspondent, which credited the check, and paid out the amount thereof on drafts of the insolvent bank before notice of the bank's failure, when defendant stopped payment of the check by the drawee bank, plaintiff, having no knowledge that the insolvent bank was a mere collecting agent, was entitled to assume that it had title to the check which it could transfer, and hence was entitled to recover thereon.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 330.*]

At Law. Action by the United States National Bank against the Amalgamated Sugar Company. Judgment for plaintiff.

Chamberlain, Thomas & Hailey, for plaintiff.
Snow & McCamant, for defendant.

BEAN, District Judge. Action on a check. The defendant is a Utah corporation, carrying on business in this state. For convenience it kept an account at the Farmers' & Traders' National Bank of La Grande. On October 1, 1908, it drew a check on the First National Bank of Ogden, Utah, for $4,000, payable to itself, and on the 5th deposited same with the La Grande Bank, using a deposit tag which had the following conditions printed on it:

"Items listed hereon are taken at owner's risk until we have reduced to our own possession the funds received by us in settlement thereof, and credits or remittances made by us therefor are subject to revocation until we have received actual final payment. Mediums of collection employed are your agents, and we assume no responsibility for their neglect, default, or failure. In making this deposit, the depositor expressly assents to the foregoing conditions."

The check, however, was indorsed by the defendant:

"Pay to the order of the Farmers' & Traders' National Bank."

The La Grande Bank was insolvent at the time; but that fact was not known to either the plaintiff or defendant, or to the general public.

---

On receipt of the check, the La Grande Bank credited defendant's account with the amount thereof, which credit, however, was never used, and on the same day indorsed the check, "Pay to any bank or banker," and forwarded it, with other items, to the plaintiff, its correspondent at Portland, "for collection and credit."

The La Grande Bank had opened an account with plaintiff in the fall of 1907, without any special agreement, however, between the two banks, except as is to be inferred from the course of business between them. It was the custom for the La Grande Bank to forward to plaintiff from time to time items for collection and credit, and for plaintiff to credit such items to the La Grande Bank upon their receipt, and to advance money to or pay drafts of the La Grande Bank upon the faith of such credit prior to the actual collection of the paper. From the time the account of the La Grande Bank was opened, plaintiff used a deposit tag for its general customers which, among other things, provided that on receiving paper payable elsewhere than in Portland it assumed no responsibility for the failure of any of its collecting agents, and should only be held liable when the proceeds in actual funds or solvent credits shall have come into its possession. This tag, however, was never used by the La Grande Bank in any of its transactions with plaintiff. The check in controversy was received by plaintiff on the 8th day of October, and immediately credited to the account of the La Grande Bank, and forwarded through the usual channels for collection. It reached the First National Bank of Ogden on October 12th, on which day the La Grande Bank suspended. Defendant, learning of such suspension, stopped payment on the check, and it was charged back, according to the usual custom of bankers, until it again reached the plaintiff. Meanwhile, however, and prior to receiving notice of the insolvency of the La Grande Bank, and without any knowledge of defendant's ownership of the check, or the conditions upon which it had been received by the La Grande Bank, unless it is to be inferred from the fact that that bank forwarded the check to it for collection and credit, the plaintiff, on the faith of the check and according to the usual course of business between it and the La Grande Bank, cashed drafts of the latter for the full amount of the check together with the subsequent credits, so that at the time it received notice of the insolvency of the La Grande Bank, and that the payment of the check had been stopped, the La Grande Bank had a credit with it of only $9.85.

Upon these facts, I think the plaintiff is entitled to judgment. If it be conceded that the La Grande Bank was a mere collecting agent, plaintiff had no knowledge of that fact. The indorsement of the check by defendant to the La Grande Bank was unrestricted. It thereby became the apparent owner, and could pass good title to a subsequent holder in due course, for value, and without notice. It forwarded the check to plaintiff with an unrestricted indorsement thereon. Plaintiff, without notice or knowledge of defendant's title, or the insolvency of the La Grande Bank, advanced money and paid drafts of the La Grande Bank, drawn on it in the usual course of business, to the full amount of the check, relying on the apparent ownership. Defendant

could have given notice of its title by indorsing the check to the La Grande Bank "for collection." It chose, however, to give an unrestricted indorsement, and thus permitted the paper to pass out into the channels of trade as apparently the property of the La Grande Bank and must abide the consequences. The facts that the check was forwarded by the La Grande Bank to plaintiff for "collection and credit," that it has not been collected, and that plaintiff, according to the custom of bankers, could charge it back to the La Grande Bank, are immaterial.

The question is whether the plaintiff had a right to treat the La Grande Bank as the owner of the check and pay its drafts on the faith of such ownership. It certainly had that right, because the check had been indorsed without restriction by the apparent owner. Having made advances thereon to the amount of the check in good faith, without knowledge of defendant's title, plaintiff is entitled to collect it. 2 Morse on Banking (4th Ed.) 961; 3 E. & A. Enc. of Law (2d Ed.) 815; Continental Bank v. Bank, 84 Miss. 103, 36 South. 189, 2 Am. & Eng. Ann. Cas. 116, and note; Bank of Met. v. New England Bank, 1 How. 234, 11 L. Ed. 115; Vickrey v. State Sav. Assn. (C. C.) 21 Fed. 773; Cody v. Bank, 55 Mich. 379, 21 N. W. 373; Miller v. F. & M. Bank, 30 Md. 392; Ayers v. F. & M. Bank, 79 Mo. 79, 49 Am. Rep. 235; Doppelt v. Nat. Bank, 175 Ill. 432, 51 N. E. 753; Hoffman v. Nat. Bank, 46 N. J. Law, 605; Wyman v. Col. Nat. Bank, 5 Colo. 30, 40 Am. Rep. 133.